UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                              Case No. 16-20045

Antonio Ruffin,                    Sean F. Cox
                                                  United States District Court Judge

    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

In this criminal action, Defendant Antonio Ruffin ("Ruffin") is charged with one count of being a felon in possession of a firearm. The matter is currently before the Court on Ruffin's Motion to Suppress. This Court held an evidentiary hearing, and heard oral argument, on May 6, 2016. As explained below, the Court shall DENY the motion because, based on the totality of the circumstances, the officers reasonably inferred possible criminal activity and therefore had reasonable suspicion to conduct a *Terry* stop on the date in question.

### BACKGROUND

Ruffin is charged with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1). (*See* 1/21/16 Indictment, D.E. No. 11). The charge arises out of an incident that took place on November 21, 2015. On that date, Two Detroit Police Department Officers were driving in a marked police car. While driving their police car on Van Dyke Street on Detroit's east side, the officers saw Ruffin walking down the street with another man.

In his Motion to Suppress, Ruffin contends that he was subjected to a *Terry* stop on that

date that was not justified by a reasonable suspicion of criminal activity.

The Government contends that the encounter began as a consensual encounter and by the time that Defendant became seized for Fourth Amendment purposes, the officers had reasonable suspicion to conduct a *Terry* stop based upon the totality of the circumstances.

With the issues so framed by the parties, this Court held an evidentiary hearing on May 6, 2016. The Government called the following individuals as witnesses at the evidentiary hearing: 1) Officer Vitaliy Borshch; and 2) Officer Jamarian Holloway. The Defense cross-examined those witnesses and called Defendant to testify at the hearing.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Officer Vitaliy Borshch has been employed by the Detroit Police Department for six and a half years. Officer Jamarian Holloway has been employed by the Detroit Police Department for seven years. Both officers are assigned to the Detroit Police Department's Tactical Response Unit, a unit that focuses on violent crimes in the City. Each morning, these two officers hear daily crime reports, that indicate where specific crimes occur in the City of Detroit. These officers wear full police uniforms and drive a fully marked police car. During their patrols, the officers often have informational encounters with citizens, wherein they ask citizens how they are doing, ask if there is anything going on in the area, such as shots fired, or if they have

anything they would like to report.

On November 21, 2015, Officers Borshch and Holloway were working together and were assigned to the Northeast District, which comprises the eleventh and seventh precincts. Before starting their shift, the officers heard a daily crime report from the previous day. The encounter at issue occurred near the intersection of Van Dyke and Milton street on the northeast side of Detroit. The officers testified that specific area, which is close to Detroit's City Airport, is a high crime area. Officer Borshch testified that, on the date in question, he had been aware of several crimes having recently occurred in that area, including shots fired, a "CCW arrest" and several narcotics arrests.

Officer Borshch was driving the police car and Holloway was riding in the passenger side of the car. The encounter with Ruffin occurred sometime between 7:30 p.m. and 10:30 p.m. It was dark out at the time of the encounter.

Officers Borshch and Holloway were driving northbound on Van Dyke, in the area of the Detroit City Airport. They observed Ruffin and another man walking southbound on Van Dyke a few blocks way. There was no automobile traffic in the area and Borshch drove the police car across the southbound lane and pulled up to the curb near where the two men were standing. Officer Borshch was driving at a normal rate of speed and did not activate the police car's lights or sirens.

After the car stopped, Officer Borshch rolled his window down and casually said something to the effect of "how are you guys doing?" Ruffin did not respond to the greeting but he stopped walking.

Both officers observed the reactions of Ruffin and his companion. When Ruffin saw the

3

officers, his eyes bulged and he had a nervous facial expression, while the other man seemed normal and relaxed. The officers then observed Ruffin grab and clutch his right side, by his waistband.  Ruffin then turned and "bladed" the right side of his body, so that the right side of his body was turned away from the officers' view, while at the same time Ruffin kept his face looking toward the officers.[1]

Officer Holloway has received training on how to identify persons who are attempting to conceal contraband, such as firearms, from police officers.  Officer Borshch has received similar training.  Based on their training and experience, the officers believed that Ruffin was attempting to conceal contraband, such as an illegal weapon, from the officers.

When the officers existed the police car, Ruffin then bladed the right side of his body a bit further from the officers.  Officer Borshch then stated, "put your hands up," in a tone raised louder than normal conversation. Both Ruffin and his companion complied with that directive. When Ruffin put his hands up, the jacket he was wearing lifted upwards and exposed his waistband area.  The officers then saw the handle of a handgun sticking out of the right-hand side of Ruffin's waistband.

Officer Holloway then made contact with Ruffin, placed him in handcuffs, and removed the handgun from the right-hand side of Ruffin's waistband.  He then asked Ruffin if he had a concealed weapons license and Ruffin conceded that he did not.  Ruffin was then arrested. Ruffin told the officers that he possessed the gun because someone in the neighborhood had threatened him.

---

[1]At the evidentiary hearing, Officer Holloway physically demonstrated how Ruffin clutched his right side, and how he bladed his body away from the officers.

**ANALYSIS & CONCLUSIONS OF LAW**

Police and citizens may have three types of permissible encounters: 1) the consensual encounter, which may be initiated without any objective level of suspicion; 2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and 2) the arrest, valid only if supported by probable cause. *United States v. Davis,* 514 F.3d 596, 607 (6th Cir. 2008). As explained in *Davis*:

> In the first type of encounter, law enforcement officers may ask citizens "general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." *Id.* at 603; *see Foster*, 376 F.3d at 584. "Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity." *Waldon*, 206 F.3d at 603.

*Id.* at 607 (citing *United States v. Avery*, 137 F.3d 343, 351 (6th Cir. 1997).

"Once a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment." *United States v. Campbell,* 486 F.3d 949, 954 (6th Cir. 2007). A seizure of an individual occurs when "under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away." *Id*.

The Sixth Circuit has explained that "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Campbell,* 486 F.3d at 954.

Here, the encounter between the officers and Ruffin began as a consensual encounter. The officers pulled up next to the two men without activating the lights or siren on the police car and simply asked the two men how they were doing. At the point when Ruffin was instructed to put his hands up, however, the encounter escalated to the point that Ruffin was seized for Fourth Amendment purposes. The question then becomes whether the officers had a valid basis for a *Terry* stop at that time.

In *Davis*, the Sixth Circuit explained the standard applicable to a non-consensual investigative detention (a "Terry stop") as follows:

> The second type of encounter follows the framework of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. "*Terry* ...permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (citing *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543–44 (6th Cir. 2002)). We engage in a two-part analysis when evaluating the constitutionality of a *Terry* stop. First, we determine "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Id.* (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). We examine the totality of the circumstances in order "to determine the reasonableness of the investigatory stop." *Id.* (citing *United States v. Bailey*, 302 F.3d 652, 658 (6th Cir. 2002)). We may take into consideration the crime level of the area as a "contextual consideration[ ]." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
> . . . .
>
> Second, we examine "whether the degree of intrusion ... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Davis*, 430 F.3d at 354 (quoting *Garza*, 10 F.3d at 1245). Thus, we must determine (1) if the detention was "sufficiently limited in time" and (2) if "the investigative means used the least intrusive means reasonably available." *Id.* (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 825–26 (6th Cir. 2005)).

*Davis*, 514 F.3d at 607-08.

In the pending motion, however, Defendant only challenges whether the first part of the above analysis is met. That is, Defendant contends that the officers did not have a reasonable suspicion to justify the investigative detention.

This inquiry requires the Court to examine whether the law enforcement officers were aware of specific and articulable facts which gave rise to a reasonable suspicion. *Id.*; *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). That determination is made in light of the "totality of the circumstances." *Id.*

It is well-established that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *Caruthers*, 458 F.3d at 466; *United States v. Bridges*, 626 F. A'ppx 620, 624 (6th Cir. 2015).

Here, when Ruffin saw the officers, his eyes bulged and he had a nervous facial expression, while the other man seemed normal and relaxed. The officers then observed Ruffin make two furtive movements. First, Ruffin grabbed and clutched his right side, right by his waistband. Second, Ruffin then turned and "bladed" the right side of his body, so that the right side of his body was turned away from the officers' view, while at the same time Ruffin kept his face looking toward the officers.

Officer Holloway has received training on how to identify persons who are attempting to conceal contraband, such as illegal firearms, from police officers. "Police officers are permitted 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008) (quoting *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002)).

This Court concludes that the furtive conduct at issue here is sufficiently objective and particularized that it should be considered by the Court. Viewed together, Ruffin's actions reasonably suggested that Ruffin was acting in an attempt to conceal contraband, such as an illegal firearm.

The Court also takes into consideration the crime level of the area where the stop occurred and other "contextual considerations." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Although these factors may not, without more, give rise to reasonable suspicion, they are relevant to the reasonable suspicion calculus. *Caruthers*, 458 F. 3d at 467. The encounter here occurred at night, when it was dark outside. More importantly, it occurred in an area near the Detroit City Airport, that was known to these officers as a high-crime area. Indeed, that is the reason this particular unit was patrolling that area.

Based on the totality of the circumstances, the officers reasonably inferred possible criminal activity and therefore had reasonable suspicion to conduct a *Terry* stop. Thus, the officers had a sufficient basis for detaining Ruffin and instructing him to put his hands up.

When Ruffin complied with the officer's directive to put his hands up, Ruffin's jacket lifted upwards and exposed the handle of a handgun in Ruffin's waistband.

Although not challenged in Defendant's Motion, the Court concludes that the degree of intrusion (ie., directing Ruffin to put his hands up, and then handcuffing him while the officers determined if Ruffin had a concealed weapons license) was reasonably related in scope to the situation at hand, which is "judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis*, 514 F.3d at 608.

## CONCLUSION & ORDER

Accordingly, for the reasons set forth above, IT IS ORDERED that Defendant Ruffin's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                                S/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: May 10, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 10, 2016, by electronic and/or ordinary mail.

                                                S/Jennifer McCoy
                                                Case Manager